# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| BRUCE GELMAN, | : | |
| on behalf of himself and all others similarly situated, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 06-5118 |
| v. | : | |
| | : | |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE COMPANY, | : | |
| Defendant. | | |

## Memorandum and Order

YOHN, J.                                                      August___, 2007

Plaintiff Bruce Gelman filed this class action lawsuit against defendant State Farm

Mutual Automobile Insurance Company ("State Farm") asserting violations of the Fair Credit

Reporting Act ("FCRA"), 15 U.S.C. § 1681 *et seq*.  Specifically, Gelman alleges State Farm

improperly accessed his consumer report in order to send him a solicitation for business, the

terms of which did not contain a firm offer of insurance.  Gelman also contends State Farm has a

business practice of improperly obtaining confidential consumer reports under the guise of the

firm offer exception of the FCRA for the purpose of mailing such solicitations.

Presently before the court is State Farm's motion to dismiss Gelman's complaint for

failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).   For the reasons that

follow, the motion will be granted.

## I. Background[1]

On or about November 18, 2004, State Farm requested and obtained Gelman's consumer report from Experian, a consumer reporting agency, without Gelman's consent or authorization. (Compl. ¶ 10.)  Gelman did not discover State Farm had viewed his consumer report until April 5, 2006, when he received a copy of his credit report from Experion.  (*Id.* ¶¶ 11-12.)  His credit report stated that State Farm had reviewed his information for a "permissible purpose by law." (*Id.* ¶ 12.)  Gelman claims that after State Farm obtained the consumer report, it mailed him "nothing more than a solicitation to apply for insurance."  (*Id.* ¶ 29.)  Gelman states that a "copy of the type of solicitation" he received from State Farm is attached to the complaint as an exhibit.[2]  The exhibit is an undated sample mailer, and Gelman does not allege when he received it.

The mailer heralds State Farm as the "No.1 auto insurer since 1942."  (Compl. Ex. A.)  In a paragraph set off by a border, the mailer makes clear that it is a "prescreened offer."  (*Id.*)  The

---

[1]The factual account accepts all allegations in the complaint as true.  *See Nami v. Fauver*, 82 F.3d 63, 65 (3d Cir. 1996).

[2]Because it is attached to the complaint, I may consider this document in ruling on State Farm's motion to dismiss.  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).  Citing *Putkowski v. Irwin Home Equity Corp.*, 423 F. Supp. 2d 1053 (N.D. Cal. 2006), State Farm argues that because the sample offer attached to the complaint is not the actual mailer Gelman received, the court has no way of determining whether Gelman received a firm offer of insurance.  In *Putkowski*, one of the plaintiffs asserted that he received one of defendant's standard solicitations that was either "substantially similar" in form to one of the mailers attached to the complaint or was in "some other form."  423 F. Supp. 2d at 1063. Because the plaintiff did not know which mailer he had actually received, *id.* at 1060 n.3, the court dismissed his FCRA claim, *id.* at 1063.  However, in this case, the complaint does allege that Exhibit A is "a copy of the type of solicitation State Farm sent to Plaintiff."  (Compl. ¶ 27.) For purposes of this motion, the mailer puts State Farm on notice of the essential elements of Gelman's case.  *Nami*, 82 F.3d at 65; *see also* Fed. R. Civ. P. 8(a), (e).

mailer states in bold enlarged font, "Call . . . for a quote or return the attached card today.  I could save you up to $356!*."  (*Id.*)  The mailer also explains "[a]s your agent, I'll help you find the right level of coverage at the right price for your needs.  By getting to know you personally, I can offer:  Competitive rates that help you save up to $356 or more.*"  (Compl. Ex. A.)  A footnote to the single asterisks states, "Actual average annual savings were $356.58 per household.  This amount is based on a January 2005 survey of new policyholders who reported savings through State Farm as compared to their previous carriers' rates."  (*Id.*)

The attached card further describes the auto insurance offering.  Its caption reads:  "Learn more about auto insurance at statefarm.com."  (Compl. Ex. A.)  The line underneath the caption and next to a checkmarked box exclaims:  "Yes! I'd like more information on State Farm auto insurance."  (*Id.*)  The attached card asks for the recipient's phone number, best time to call, name of current car insurance carrier and renewal date of car insurance.  (*Id.*)  The attached card also gives the recipient the opportunity to request more information on homeowners insurance, flexible payment options, life insurance or "other."  (*Id.*)

The mailer contains the following opt-out notice in the paragraph set off by a border: "You can choose to stop receiving 'prescreened' offers of insurance from this and other companies by calling toll-free (1-888-567-8688 and 1-888-203-7969).  See 'PRESCREEN & OPT-OUT NOTICE' on the other side for more information about prescreened offers."  (Compl. Ex. A.)  The other side of the mailer contains the following information:

> PRESCREEN & OPT-OUT NOTICE:  This "prescreened" offer of insurance is based on information in your consumer reports, including your credit report, indicating that you meet certain eligibility criteria.  This offer is not guaranteed if you do not meet our criteria at the time of application and expires 60 days after you receive it.  If you wish to omit your name from future State Farm mailings, please

contact me or the State Farm Customer Mail Response Center at: State Farm Insurance Companies - Customer Mailer Response Center - PO Box 1800 - Aurora, IL 60507-9863.  If you do not want to receive prescreened offers of insurance from this and other companies, contact the consumer reporting agencies below by writing or calling toll-free . . . .

(*Id.*)  Gelman claims that the mailer sent to him by State Farm did not qualify as a firm offer of insurance within the meaning of the FCRA because (1) it was "vague and totally lacking in terms" and with "no value beyond a solicitation for business," and (2) it failed to provide "clear and conspicuous" disclosures as required by § 1681m(d).  (Compl. ¶ 28.)

Gelman filed a complaint on November 22, 2006 alleging the following claims.  Gelman asserts State Farm obtained his credit report from a consumer reporting agency under false pretenses in knowing and willful violation of § 1681q.   Gelman also contends State Farm knowingly and willfully violated § 1681b(f) by obtaining his credit report without a permissible purpose.  Next, Gelman argues that State Farm knowingly and willfully violated § 1681m(d) by failing to provide "clear and conspicuous" disclosures in its offer of insurance.  Gelman further submits State Farm is liable under § 1681o for its negligent noncompliance with the aforementioned statutory requirements.  Additionally, Gelman asks that the court issue a declaratory judgment declaring that State Farm's policy of improperly reviewing consumer reports without providing a firm offer of credit and/or insurance is unlawful.  Gelman also seeks an order enjoining State Farm from improperly obtaining and reviewing credit reports.   Lastly, Gelman requests attorney fees and costs, as well as statutory and punitive damages.

On January 11, 2007, State Farm filed the instant motion to dismiss under Rule 12(b)(6).  State Farm believes it is not liable for willfully violating the false pretense provision of the FCRA, § 1681q, because it obtained Gelman's credit report for the permissible purpose of

4

extending a firm offer of insurance to Gelman.  In a similar vein, State Farm contends that because it extended a firm offer of insurance to Gelman, it also did not willfully violate the permissible purpose provision of the FCRA, § 1681b(f).  State Farm also argues that there is no private right of action available for violations of the "clear and conspicuous" disclosure requirement contained in § 1681m.  Further, State Farm claims that there is no cause of action for a negligent violation of § 1681q, and that the negligent violations of §§ 1681b(f) and 1681m should be dismissed for the same statutory reasons that the willful violations of these provisions should be dismissed.  Finally, State Farm claims that Gelman lacks standing to request declaratory and injunctive relief because the FCRA does not permit private litigants to seek such remedies.

Gelman responded to State Farm's motion on February 9, 2007.  State Farm, in turn, filed a reply memorandum in support of its motion on February 23, 2007.  After the Supreme Court's intervening decision in *Safeco Insurance Company of America v. Burr*, 2007 U.S. LEXIS 6963 (June 4, 2007), Gelman filed a notice of supplemental authority, to which State Farm filed a response.

## II. Discussion

### A.  Standard of Review

A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint.  *Johnsrud v. Carter*, 620 F.2d 29, 33 (3d Cir. 1980) (citing *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957)).  In evaluating a motion to dismiss, all allegations in the complaint and all reasonable inferences that can be drawn therefrom must be accepted as true and viewed in the light most favorable to the non-moving party.  *Rocks v. City of Philadelphia*, 868 F.2d 644, 645 (3d Cir. 1989) (citing

*Wisniewski v. Johns-Manville Corp.*, 759 F.2d 271, 273 (3d Cir. 1985)).  The court may dismiss a complaint, "only if it is certain that no relief could be granted under any set of facts that could be proved consistent with the allegations."  *Swin Res. Sys., Inc. v. Lycoming County,* 883 F.2d 245, 247 (3d Cir. 1989) (citing *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984)).  When ruling on a motion to dismiss, courts typically make their decisions based on "the allegations contained in the complaint, exhibits attached to the complaint and matters of public record."  *Pension Benefit Guar. Corp. v. White Consol. Indus., Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

### B.  The Fair Credit Reporting Act

Congress enacted the FCRA to "ensure fair and accurate credit reporting, promote efficiency in the banking system, and protect consumer privacy."  *Safeco Ins. Co. of Am. v. Burr*, 2007 U.S. LEXIS 6963, at *10 (June 4, 2007) (citing 84 Stat. 1128, 15 U.S.C. § 1681); *see also Philbin v. Trans Union Corp.*, 101 F.3d 957, 962 (3d Cir. 1996).  In order to protect consumer privacy, the FCRA allows consumer reporting agencies[3] to release consumer reports[4] to persons[5]

---

[3]In this case, Experian is a "consumer reporting agency" which the FCRA defines as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  § 1681a(f).

[4]As relevant in this case, a "consumer report" under the FCRA means "any written, oral, or other communication of any information by a consumer reporting agency bearing on a consumer's credit worthiness [creditworthiness], credit standing, credit capacity, character, general reputation, personal characteristics, or mode of living which is used or expected to be used or collected in whole or in part for the purpose of serving as a factor in establishing the consumer's eligibility for . . . credit or insurance to be used primarily for personal, family, or household purposes[.]"  §1681a(d)(1)(A).

[5]In this case, State Farm is a "person" which the FCRA defines as "any individual, partnership, corporation, trust, estate, cooperative, association, government or governmental

only under certain limited, statutorily-defined "permissible purposes."  § 1681b.  In those situations where the consumer[6] has not initiated a credit or insurance transaction, the FCRA permits the dissemination of a consumer report in even fewer instances.  § 1681b(c)(1).  For example, a consumer report may be furnished in conjunction with a credit or insurance transaction if "the transaction consists of a firm offer of credit or insurance."  § 1681b(c)(1)(B)(i).[7]

Under the FCRA, any company that uses a consumer report to issue a firm offer of insurance must include specific disclosures in a "clear and conspicuous statement."  § 1681m(d). This statement must disclose that 1) information in the consumer's credit report was used, (2) the consumer satisfied the criteria for insurability, 3) the offer may not be extended if the consumer does not continue to meet the criteria for insurability or does not provide any required collateral, and 4) the consumer may opt-out from receiving any future offers.  § 1681m(d)(1)(A)-(E).  The statement must also include an address and toll-free number in a font size and style that is "simple and easy to understand" by a consumer who wishes to exercise his or her right to opt-out.  § 1681m(d)(2)(A)-(B).

The Federal Trade Commission ("FTC") has primary responsibility for government enforcement of the FCRA, § 1681s, but the FCRA also provides for certain private causes of

---

subdivision or agency, or other entity."  § 1681a(b).

[6]The term "consumer" means an individual.  §1681a(c).

[7]The complaint alleges only that State Farm failed to make a firm offer of "insurance." (Compl. ¶ 28.)  Thus, a firm offer of "credit" is not at issue in this case.

action, §§ 1681n-o.[8]  Section 1681n and 1681o establish civil liability for willful and negligent

noncompliance with any requirement of § 1681.  §§ 1681n-o.  Additionally, § 1681q provides for

criminal liability for obtaining consumer information under false pretenses.  § 1681q.  However,

civil liability also attaches for any willful failure to comply with the false pretenses provision

under § 1681n.  *Zamora v. Valley Fed. Sav. & Loan Ass'n*, 811 F.2d 1368, 1370 (10th Cir. 1987);

*Kennedy v. Border City Sav. & Loan Ass'n*, 747 F.2d 367, 369 (6th Cir. 1984).  Recently, the

Supreme Court held that a willful violation encompasses reckless disregard of any requirement of

the FCRA.  *Safeco*, 2007 U.S. LEXIS 6963, at *10.[9]

### C.  Gelman's Claims

#### 1.  False Pretenses Claim (Count I)

In Count I, Gelman alleges State Farm knowingly and willfully obtained his consumer

report from a consumer reporting agency under false pretenses in violation of § 1681q.  "[T]he

standard for determining whether a consumer report is acquired under 'false pretenses' is usually

defined in terms of the 'permissible purposes' for obtaining those reports which are set forth at

15 U.S.C. § 1681b."  *Scott v. Real Estate Fin. Group*, 956 F. Supp. 375, 381 (E.D.N.Y. 1997)

(citing, *e.g.*, *Zamora*, 811 F.2d at 1370); *see also Daley v. Haddonfield Lumber Inc.*, 943 F.

---

[8]Gelman and State Farm disagree on whether a consumer may pursue a private cause of action for a violation of § 1681m, which contains the statute's disclosure requirements.  As discussed in full below, I find that the FCRA, as amended by the Fair and Accurate Credit Transactions Act of 2003 ("FACTA"), clearly precludes private actions for § 1681m violations.  *See, e.g., Miller v. Corestar Fin. Group of Pa., Inc.*, 2006 U.S. Dist. LEXIS 45323, at *8 (E.D. Pa. June 29, 2006).

[9]In *Safeco*, the Supreme Court examined the phrase "willfully fails to comply" contained in § 1681n(a) while addressing an alleged violation of the adverse action notice requirement in § 1681m(a).  2007 U.S. LEXIS 6963, at *10.

Supp. 464, 466-67 (D.N.J. 1996); *Graziano v. TRW, Inc.*, 877 F. Supp. 53, 57 (D. Mass. 1995).

To prove this claim, Gelman must show that State Farm lacked a permissible purpose in

obtaining his credit report. *Kennedy v. Chase Manhattan Bank USA, NA*, 369 F.3d 833, 842 (5th

Cir. 2004); *Korotki v. Att'y Servs. Corp. Inc.*, 931 F. Supp. 1269, 1276 (D. Md. 1996).  In

addition to an impermissible purpose, courts also require "a calculated attempt to mislead another

in order to obtain information." *Scott*, 956 F. Supp. at 381; *Daley*, 943 F. Supp. at 467;

*Graziano*, 877 F. Supp. at 57.  Additionally, "a misrepresentation is non-actionable if the FCRA

would permit the requesting party to receive the credit report for an albeit unstated but

permissible purpose." *Daley*, 943 F. Supp. at 467.

As discussed above, the FCRA defines a number of permissible purposes for obtaining a

consumer report, § 1681b, one of which is at issue in this case.  Particularly, a consumer report

may be provided in conjunction with an insurance transaction that is not initiated by the

consumer if "the transaction consists of a firm offer of . . . insurance."  § 1681b(c)(1)(B)(i).

Gelman claims that State Farm accessed his credit information for an impermissible purpose

because the offer of insurance State Farm sent him was "vague and totally lacking in terms" and

with "no value beyond a solicitation for business."  (Compl. ¶ 28.)  State Farm argues that it did

extend Gelman a firm offer of  insurance.  For reasons elaborated in the next section, I find that

the mailing sent to Gelman by State Farm constitutes a firm offer of insurance as defined by the

FCRA.  *See Advanced Conservation Sys. Inc. v. Long Island Lighting Co.*, 934 F. Supp. 53, 54

(E.D.N.Y. 1996) ("[A] showing by [a defendant] that it had a permissible purpose under the

FCRA for obtaining the report is a complete defense to the charge.")   As Gelman has not alleged

any other impermissible purpose, the complaint fails to state a claim under § 1681q, and Count I

will be dismissed.[10]

## 2. Permissible Purpose Claim (Count II)

In Count II, Gelman asserts State Farm did not have a permissible purpose to obtain his credit report because it did not extend him a "firm offer of . . . insurance" within the meaning of the FCRA.  Gelman claims that the State Farm offer was not a firm offer because (1) it was vague, lacking in terms, and without value, and (2) the disclosures contained in the offer did not comply with § 1681m(d) which requires certain disclosures in a "clear and conspicuous manner." (Compl. ¶ 28.)

As set forth above, one of the limited permissible purposes for which a company may access a consumer's credit report without the consumer's initiation of an insurance transaction with that company involves the making of a "firm offer of . . . insurance."  § 1681b(c)(1)(B)(i).  Therefore, to determine whether the offer contained in the mailer sent to Gelman constitutes a firm offer of insurance, *see supra* note 2, I must first look to the plain language of the relevant provision of the FCRA.  *See Barnhart v. Sigmon Coal Co., Inc.*, 534 U.S. 438, 461-62 (2002) ("[C]ourts must presume that a legislature says in a statute what it means and means in a statute what it says there.  When the words of a statute are unambiguous, then, this first canon is also the last: 'judicial inquiry is complete.'") (quoting *Conn. Nat. Bank v. Germain*, 503 U.S. 249, 253-54 (1992)).

The FCRA defines a "firm offer" to mean:

---

[10]Because I conclude that the State Farm mailer is a firm offer of insurance under the FCRA, it is unnecessary to address State Farm's remaining contention that Gelman's false pretenses claim should be dismissed because Gelman failed to allege any false statements made to the credit reporting agency.

any offer of . . . insurance to a consumer that will be honored if the consumer is determined, based on information in a consumer report on the consumer, to meet the specific criteria used to select the consumer for that offer.

§ 1681a(l).  Under the statute, however, a firm offer may be a conditional one.  Specifically, a firm offer may be conditioned on one of the following three requirements which the consumer must meet in order to accept effectively the offer of insurance:  (1) the consumer may need to satisfy additional pre-selected criteria not in the credit report, including criteria bearing on insurability; (2) the consumer may be subject to verification that he continues to meet the prescreen criteria; (3) the consumer may need to meet collateral requirements established before the offer and disclosed within the offer.  § 1681a(l)(1)-(3).[11]

---

[11]Section 1681a(l)(1)-(3) provides:

(1) The consumer being determined, based on information in the consumer's application for the . . . insurance, to meet specific criteria bearing on . . . insurability, as applicable, that are established –
    (A) before selection of the consumer for the offer; and
    (B) for the purpose of determining whether to extend . . . insurance pursuant to the offer.
(2) Verification.
    (A) that the consumer continues to meet the specific criteria used to select the consumer for the offer, by using information in a consumer report on the consumer, information in the consumer's application for the . . . insurance, or other information bearing on the . . . insurability of the consumer; or
    (B) of the information in the consumer's application for the . . . insurance, to determine that the consumer meets the specific criteria bearing on . . . insurability.
(3) The consumer furnishing any collateral that is a requirement for the extension of the . . . insurance that was –
    (A) established before the election of the consumer for the offer of . . . insurance; and
    (B) disclosed to the consumer in the offer of . . . insurance.

§ 1681a(l)(1)-(3).

11

Notably, Gelman does not argue that the FCRA is ambiguous in its definition of firm

offer.   Instead, citing *Cole v. U.S. Capital*, 389 F.3d 719 (7th Cir. 2004), and its progeny of cases

examining offers of credit, Gelman urges a more expansive meaning of firm offer of insurance.

According to Gelman, a firm offer of insurance "'must have *sufficient value* for the consumer to

justify the absence of the statutory protection of his privacy,'" (Pl.'s Resp. 7 (quoting *Cole*, 389

F.3d at 726) (emphasis added)), else the solicitation is a mere sham.   Gelman asserts that the

factors I should consider under his proposed "sufficient value" test include:  (1) "[Whether it

was] clear that [insurance approval] was guaranteed," (2) "The precise rate of [insurance] and

other material terms . . . included in the solicitation," and (3) "The maximum amount [of

insurance or coverage]."  (Pl.'s Resp. 7 (quotation omitted).)  Gelman claims that failing to

consider whether an offer of insurance conveys sufficient value to the consumer "'upsets the

balance Congress carefully struck between a consumer's interest in privacy and the benefit of a

firm offer of credit for all those chosen through the pre-screening process.'"  (Pl.'s Resp. 7

(quoting *Cole*, 389 F.3d at 726-27).)

Gelman's reading of the FCRA is unpersuasive for two reasons.  First, while I am

sympathetic to his point concerning the protection of consumer privacy interests, I must

nevertheless evaluate his complaint with respect to the terms of the statute as written.  Gelman's

argument simply has no basis in the statutory text which unmistakably refers to a firm offer as

"*any* offer of . . . insurance to a consumer that will be honored."  § 1681a(l) (emphasis added).

The definition neither contains a "sufficient value" requirement, nor requires that the material

terms of the offer be included in the initial communication to the consumer.  *See* § 1681a(l); *see*

*also Kennedy*, 369 F.3d at 841 (holding, in the context of a "firm offer of credit," that a firm offer under the FCRA "really means a firm offer if you meet certain criteria" (quotations omitted)); *Gross v. Wash. Mut., Inc.*, 2007 U.S. Dist. LEXIS 34837, at **10-13 (S.D.N.Y. May 10, 2007) (refusing to import Cole's "sufficient value" requirement into the definition of a "firm offer of credit" because it is not found in the FCRA); *Dixon v. Shamrock Fin. Corp.*, 2007 U.S. Dist. LEXIS 29335, at *10-12 (D. Mass. Apr. 20, 2007) (same); *Pearson v. Novastar Home Mortgage, Inc.*, 2006 U.S. Dist. LEXIS 36282, at **10-15 (M.D. La. Mar. 28, 2006) (same); *Putkowski*, 423 F. Supp. 2d at 1060 (same).

Second, all of the cases cited by Gelman to endorse the "substantial value" test and "material terms" requirement relate to firm offers of *credit*.  Indeed, Gelman has not provided one case in which a court of appeals has addressed a firm offer in the context of an *insurance* product.  Nor has the FTC issued any regulations, guidelines or commentary which supports Gelman's position in the insurance situation.  The Federal Reserve Board ("FRB") has recognized that it may not even be possible in insurance cases to state all of the material terms of a firm offer in the initial solicitation.  (Def.'s Mot. to Dismiss Ex. A at 30.)[12]  In its Report to Congress on Further Restrictions on Unsolicited Written Offers of Credit and Insurance, the FRB stated:

---

[12]Pursuant to § 213(e) of FACTA, Congress asked the Board of Governors of the Federal Reserve System to conduct a study of prescreened solicitations in order to learn more about unsolicited written offers of credit and insurance.  Board of Governors of the Federal Reserve System, Report to Congress on Further Restrictions on Unsolicited Written Offers of Credit & Insurance 1 (Dec. 2004).  State Farm has attached a copy of this study to its Motion to Dismiss. (*See* Def.'s Mot. to Dismiss Ex. A.)  As the report is a published report of an administrative body, I may consider it in deciding this motion.  *See Pension Benefit Guar. Corp.*, 998 F.2d at 1197.

13

[In contrast to prescreened solicitations for credit cards,] insurance sales typically require an extra step before the benefits can be fully realized. Prescreened solicitations for insurance generally do not contain complete pricing information tailored to a consumer because it is difficult to set the price of insurance solely based on information in CRA files. Specifically, prescreening using CRA files reveals something about the creditworthiness of individuals (maybe because it reveals something about the reliability of the insured), but it does not reveal any information about the property or life to be insured. The insurance company must obtain that information through some sort of further contact with the recipient of a prescreened solicitation before the underlying insurance price can be specified completely.

(Def.'s Mot. to Dismiss Ex. A at 30).)

Moreover, the fact that Gelman does not actually allege nor argue in his briefing what material terms of insurance should have been present in his offer implicitly supports the FRB's position that it would be difficult to supply such terms without having further particularized information beyond what is available in the consumer report. Thus, absent any judicial or administrative authority addressing a firm offer in the insurance context, I will not depart from the plain language of the FCRA. *See Nasca v. J.P. Morgan Chase Bank, N.A.*, 2007 U.S. Dist. LEXIS 15629, at *13 (S.D.N.Y. Mar. 5, 2007) (stating, in a credit offer case, "[t]his Court . . . is loathe to import a requirement into a statutory definition that was not placed there by Congress. If Congress believes that statutory definition of 'firm offer of credit' does not adequately protect a consumer's interest in privacy of her credit information, it is for Congress to act; it is not for the judiciary to add requirements that do not exist in the statute.").[13]

For similar statutory reasons, Gelman's assertion that the offer is not a firm offer of

---

[13]Even though the statute is unambiguous as written, it is readily apparent that "[a] 'firm offer' does not have to be very firm." National Consumer Law Center, Fair Credit Reporting 129 (5th ed. 2002 and Supp.). There is not even an express requirement under the FCRA that a firm offer be in writing. *See* § 1681a(l). "Perhaps FTC guidelines or commentary will in time provide useful guidelines on just when a firm offer is firm." National Consumer Law Center, Fair Credit Reporting 129.

14

insurance because it lacked clear and conspicuous disclosures is unavailing because the definition of a firm offer does not include a disclosure requirement. *See* §§ 1681a(l) and 1681b(c)(1)(B)(i). "The disclosures described in § 1681m(d) are a separate and subsequent requirement, implicated only when a firm offer of credit [or insurance] is made, and the failure to provide these disclosures do[e]s not strip a solicitation of its status as a firm offer of credit." *Murray v. Household Bank (SB), N.A.*, 386 F. Supp. 2d 993, 996 (N.D. Ill. 2005); *see also Cole*, 389 F.3d at 729 n.11 (noting that "the requirements of clear and conspicuous disclosures are only triggered if a valid firm offer was extended").

Turning now to a review of the complaint in light of the above, Gelman has failed to allege that State Farm's offer was not a firm offer within the meaning of §§ 1681a(l) and 1681b(c)(1)(B)(i). No allegation is made in the complaint that Gelman responded to State Farm's solicitation and then was denied insurance despite meeting the pre-screening criteria for insurability. *See* § 1681a(l). Gelman also does not allege that State Farm violated the FCRA by imposing conditions on the offer beyond those permitted by the statute. *See* § 1681a(l)(1)-(3). Rather, the offer for savings up to $356 annually on auto insurance makes clear State Farm complied with the requirements of the FCRA. (*See* Compl. Ex. A.) State Farm expressed in its offer that "[t]his 'prescreened' offer of insurance is based on information in your consumer reports, including your credit report, indicating that you meet certain eligibility criteria. This offer is not guaranteed if you do not meet our criteria at the time of application and expires 60 days after you receive it." (Compl. Ex. A.) The statute requires nothing more. Because I find that State Farm sent Gelman a firm offer of insurance, a permissible purpose under the FCRA, the complaint does not allege a violation of § 1681b. Accordingly, Count II will be dismissed.

15

### 3.  Disclosure Claim (Count III)

In Count III, plaintiff seeks relief for an alleged violation of § 1681m(d) asserting that State Farm failed to provide disclosures in a "clear and conspicuous manner."  However, the FCRA, as amended by FACTA,[14] explicitly excludes private rights of action for § 1681m(d) violations.  The current version of the disclosure section reads,  "Sections 1681n and 1681o [the sections allowing private causes of action] of this title shall not apply to any failure of any person to comply with this section."  § 1681m(h)(8)(A).  Further, it states, "This section shall be enforced exclusively under Section 1681s by the Federal agencies and officials identified in this section.  *Id.*  Thus §1681m(h)(8)(A) prohibits private causes of action for §1681m(d) violations.

In spite of the plain language of the statute, Gelman relies on *Barnette v. Brook Road, Inc.*, 429 F. Supp. 2d 741 (E.D. Va. 2006), to argue that the prohibition of a private right of action contained in § 1681m(h)(8) only bars private rights of action to enforce §1681m(h), not § 1681m in its entirety.  (Pl.'s Resp. 12-13.)   The *Barnette* court set out to resolve the ambiguity it believed had been created by the word "section" in §1681m(h)(8):  whether "section" should be read as "section," meaning §1681m, or as "subsection," meaning § 1681m(h)(8).  429 F. Supp. 2d at 746.  The *Barnette* court placed great emphasis on § 312(f) of FACTA, which provides that "[n]othing in this section, the amendments made by this section, or any other provision of this Act shall be construed to affect any liability under section 616 or 617 of the Fair Credit Reporting Act (15 U.S.C. [§§] 1681n, 1681o) that existed on the day before the date of enactment of this Act."  429 F. Supp. 2d at 747 (quoting FACTA, Pub. L. No. 108-159, § 312(f),

---

[14]The FACTA amendments were passed on December 4, 2003 and became effective on December 4, 2004.  *See* Pub. L. No. 108-159, 117 Stat. 1952 (2003).

117 Stat. 1952, 1993).   Prior to the FACTA amendments, private parties were permitted to bring

civil actions to remedy § 1681m violations.  *Barnette*, 429 F. Supp. 2d at 747.  From this, the

court reasoned that the "liability" left unaffected by FACTA's amendments explicitly includes

the enforcement of the FCRA's requirements through a private action.  *Id.*  Thus, the court

concluded that "§ 312(f) dictates that private individuals may still enforce the requirements of §

1681m that ante-dated FACTA."  *Id.*  According to the court, this result is supported by the

legislative history:  "had Congress sought to eliminate the ability of consumers to enforce the

requirements [of Section 1681m] created by FCRA, an act intended to protect consumer privacy,

some member of the legislature would have noted this withdrawal."  *Id*. at 748 (citations

omitted).

However, every other federal court that has considered this issue, including one within

this district, *see Miller v. Corestar Fin. Group of Pa, Inc.*, 2006 U.S. Dist. LEXIS 45323 (E.D.

Pa. June 29, 2006), has concluded that the FACTA amendments eliminated the private right of

action to enforce the § 1681m(d) disclosure requirements.  *See Perry v. First Nat'l Bank*, 459

F.3d 816, 822 (7th Cir. 2006) (citing cases).   The Seventh Circuit in *Perry* explicitly addressed

*Barnette* and found "[w]hile section 312(f) of FACTA provides that the amendments shall not

'affect any liability' under 15 U.S.C. §§ 1681n and 1681o, it says nothing about who has the right

to bring suit to hold responsible parties liable under §§ 1681n and 1681o."  *Perry*, 459 F.3d at

823.   The *Perry* court placed primary emphasis on the unambiguous language of § 1681m(h)(8)

that tracks the hierarchical scheme used by Congress to subdivide statutory sections.[15]  *Id.* at 820

---

[15]As explained by the Supreme Court in *Koons Buick Pontiac GMC, Inc. v. Nigh*:

This hierarchy is set forth in drafting manuals prepared by the legislative counsel's

(citing *Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60-61 (2004)).  The court found

that because Congress used these standard designations in § 1681m, "section" in §

1681m(h)(8)(A) clearly refers to § 1681m as a whole.  *Perry*, 459 F.3d at 820.

Like the *Perry* court, the *Miller* court relied on Congress's hierarchical scheme in

subdividing statutory sections and the express language of the FACTA amendments to conclude

that FACTA had eliminated a private right of action under § 1681m.  *Miller*, 2006 U.S. Dist.

LEXIS 45323, at *9.  I find this great weight of authority persuasive and will adhere to the plain

---

offices in the House and the Senate.  The House manual provides:  "To the maximum
extent practicable, a section should be broken into--

"(A) subsections (starting with (a));

"(B) paragraphs (starting with (1));

"(C) subparagraphs (starting with (A));

"(D) clauses (starting with (i)) . . . ."  House Legislative Counsel's Manual on
Drafting Style, HLC No. 104-1, p 24 (1995).

The Senate manual similarly provides:  "A section is subdivided and indented as
follows:

"(a) Subsection.--

"(1) Paragraph.--

"(A) Subparagraph.--

"(i) Clause.--" Senate Office of the Legislative Counsel, Legislative Drafting Manual
10 (1997).

543 U.S. at 60-61.

terms of the statute.[16]    Therefore, Gelman's disclosure claim will be dismissed.[17]

## 4.  Declaratory and Injunctive Relief (Counts V and VI)

In Counts V and VI, Gelman seeks declaratory and injunctive relief.  However, the civil

liability provisions of the FCRA expressly refer to damages and attorney fees, but not to

injunctive or declaratory relief.  *See* §§ 1681n-1681o.  Elsewhere, the FCRA explicitly grants the

FTC the power to pursue injunctive relief.  § 1681s.  Thus, "the affirmative grant of power to the

FTC to pursue injunctive relief, coupled with the absence of a similar grant to private litigants

when they are expressly granted the right to obtain damages and other relief, persuasively

demonstrates that Congress vested the power to obtain injunctive relief solely with the FTC."

*Washington v. CSC Credit Servs.*, 199 F.3d 263, 268 (5th Cir. 2000); *accord Miller*, 2006 U.S.

Dist. LEXIS 45323, at **16-17.[18]  Further, because a claim for declaratory relief would frustrate

---

[16]Gelman also argues that his cause of action under § 1681m arose when State Farm accessed his report for an impermissible purpose on November 18, 2004, prior to effective date of § 1681m(h)(8).  (Pl.'s Resp. 13-14.)  Accordingly, Gelman believes he should not be "penalized" just because State Farm "merely mailed the flier after the effective date of the amendment."  (*Id.* at 14.)  However, "no cause of action exists until the consumer receives the written solicitation."  *Miller*, 2006 U.S. Dist. 45323, at *12 n.2.  Here, the complaint does not allege when Gelman received the mailing, but Gelman's briefing makes clear that this occurred after the effective date of FACTA, so leave to amend would be futile.

[17]Because I find that the complaint has not stated violations of §§ 1681b(f) and 1681q, and that a private cause of action is not available for §1681m(d) violations, it is unnecessary to determine whether State Farm willfully, recklessly, or negligently violated these sections.  Therefore, I do not reach the particular issue raised by the parties of whether a violation of § 1681q based on negligence may also form a basis for civil liability under § 1681o.  Count IV, asserting negligent violations of §§ 1681b, 1681m(d) and 1681(q), therefore, will also be dismissed.

[18]While Gelman acknowledges that the *Miller* court found that injunctive relief is not available to private litigants under the FCRA, he claims that there is an "uncertainty" on this issue within this district.  (Pl.'s Resp. 11.)  Gelman suggests that *Dunn v. Lehigh Valley Center for Sight, P.C.*, 2003 U.S. Dist. LEXIS 17727 (E.D. Pa. Sept. 30, 2003), held that private litigants

the FCRA's limitation of injunctive relief, such a claim cannot be maintained.  *See Washington*, 199 F.3d at 268; *see also Lederman v. Allied Collection Serv.*, 2007 U.S. Dist. LEXIS 9414, at *2 (S.D. Fla. Feb. 9, 2007) ("Declaratory or injunctive relief is not available to private plaintiff, though the Federal Trade Commission can obtain such relief pursuant to 15 U.S.C. § 1681s.").[19]

Gelman asks that I overlook the express civil liability provisions and use inherent authority to issue an injunction in this matter on the basis of this court's jurisdiction.  Generally, "absent a clear congressional command to the contrary, federal courts retain their authority to issue injunctive relief in actions over which they have jurisdiction."  *Tanimura & Antle, Inc. v. Packed Fresh Produce, Inc.*, 222 F.3d 132, 138  (3d Cir. 2000) (quotation omitted) (citing *Califano v. Yamasaki*, 442 U.S. 682, 705 (1978)).  However, as discussed above, Congress has clearly and unambiguously limited this court's equity jurisdiction under the FCRA. Accordingly, because injunctive and declaratory relief are not available to Gelman under the FCRA, Counts V and VI will also be dismissed.[20]

## III. Conclusion

---

may seek injunctive relief.  (Pl.'s Resp. 11.)  However, in that case, the court dismissed the plaintiff's claim for injunctive relief and concluded that "injunctive relief is not a separate cause of action" under the FCRA.  *Dunn*, 2003 U.S. Dist. LEXIS 17727, at *4.

[19]As the *Miller* court noted, while the Third Circuit has not yet spoken to this issue as it relates to the FCRA, it has reached a similar conclusion with respect to the Fair Debt Collections Practices Act ("FDCPA"), which has similar remedy provisions.  2006 U.S. Dist. LEXIS 45323, at *17.  In *Weiss v. Regal Collections*, the Third Circuit held that because the FDCPA expressly provides declaratory and equitable relief only to the FTC, such equitable relief is not available in a private plaintiff action under the FDCPA.  385 F.3d 227, 341 (3d Cir. 2004).

[20]Because no claims remain, Gelman's request for punitive damages in Count VII is moot.

For the aforementioned reasons, State Farm's motion to dismiss will be granted, and Gelman's complaint will be dismissed.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

|  |  |  |
|---|---|---|
| | : | |
| BRUCE GELMAN, | : | |
| on behalf of himself and all others similarly situated, | : | CIVIL ACTION |
| Plaintiff, | : | |
| | : | NO. 06-5118 |
| v. | : | |
| | : | |
| STATE FARM MUTUAL | : | |
| AUTOMOBILE INSURANCE COMPANY, | : | |
| Defendant. | : | |

### ORDER

**AND NOW**, this _____ day of August, 2007, upon consideration of defendant's motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(6) (Docket # 4), plaintiff's response, defendant's reply thereto, plaintiff's notice of supplemental authority and defendant's response, **IT IS HEREBY ORDERED THAT** the motion to dismiss is **GRANTED** and plaintiff's complaint is **DISMISSED WITH PREJUDICE**.

s/ William H. Yohn Jr.

William H. Yohn, Jr., Judge
